## STANDARD OIL CO. *v*. MURRAY.

1. Specific Performance—Land Contract—Evidence—Admissibility.

In a suit for the specific performance of an option contract for the sale of land, repudiated by defendant on the ground that she did not understand what she was signing, testimony by defendant of conversations she had with the real estate broker, who was her agent, were inadmissible.

2. Same—Principal and Agent—Evidence—Admissibility.

Neither may she plant any right to relief upon the acts of her agent or on representations made to her by him or want of explanation by him without connecting plaintiff's agent therewith.

3. Same—Attorney and Client—Self-serving Statements—Evidence.

Conversations between defendant and her attorney should have been excluded when objected to, since although it was proper to show that she had at once consulted an attorney, self-serving statements made to him are inadmissible to show her state of mind.

4. SAME—WANT OF UNDERSTANDING—FRAUD—RESCISSION.

Want of understanding by defendant of the option she signed is not ground for rescission, in the absence of misrepresentation by plaintiff's agent or of conduct leading her into mistake or bringing home to him knowledge of her want of understanding and therefore of need to inform her.

5. CONTRACTS—UNILATERAL MISTAKE—FRAUD—RELEASE.

A unilateral mistake arising from lack of understanding on the part of the party signing an option, undisclosed to, and undiscovered by, the other party, and not induced by misrepresentation, and with opportunity open to the party to have full information, will not release one who signs a contract with ability and opportunity to read the same.

6. SPECIFIC PERFORMANCE—DELAY CAUSED BY PARTY NOT GROUND FOR RELIEF.

Where a delay beyond the stipulated time in making the final payment was caused by defendant's failure to furnish a suitable abstract, which she had agreed to do, she could not take advantage of such delay to rescind on the ground that time was of the essence of the contract.

7. SAME—ACCEPTANCE—SUFFICIENCY—FRAUDS, STATUTE OF.

Acceptance of the option in writing signed by plaintiff company, by "G., manager," held, sufficient although the authority of said manager was not shown.

8. SAME—CONDITION VOIDED BY ACCEPTANCE AND TENDER.

A provision in the option releasing plaintiff if an ordinance or permit could not be obtained to conduct its business upon the premises, or if obtained, if it should be revoked before the consummation of the purchase, did not survive the notice of acceptance and tender of full performance and therefore constitutes no defense.

9. SAME—NOT A REMEDY OF RIGHT—DISCRETION OF COURT.

Although the remedy of specific performance is not a matter of strict legal right, but rests in the sound discretion of the court, held, under the evidence, that the established principles of equity require specific performance in this case, and the decree of the court below in favor of defendant is reversed.

Appeal from St. Clair; Tappan (Harvey), J.  Submitted April 19, 1921.  (Docket No. 101.)  Decided June 6, 1921.

Bill by the Standard Oil Company against Mary C. Murray for the specific performance of a land contract. From a decree for defendant, plaintiff appeals. Reversed, and decree entered for plaintiff.

*W. L. Jenks,* for plaintiff.

*Walsh & Walsh,* for defendant.

WIEST, J.  Bill for specific performance of an option given by defendant to plaintiff to sell to it certain premises in the city of Port Huron and accepted by plaintiff.  It appears that March 14, 1919, J. G. O'Brien, an agent of plaintiff, was in Port Huron looking for sites for service stations and had his attention called to the premises in suit, and finding that defendant was owner thereof and resided thereon he visited her, and she sent him to see H. P. Warwick, a real estate dealer with whom she had listed her property for sale at a price of $8,000.

Mr. O'Brien called upon Mr. Warwick and was informed of the price at which the property had been listed and made the proposition that he would put the matter up to the Chicago office at a price of $7,500 on an option to purchase.  Mr. Warwick at once took up the matter of sale with defendant and reported to Mr. O'Brien, and Mr. O'Brien and Mr. Warwick went together to see defendant and at her home an option was signed by defendant giving the plaintiff the right, in consideration of $1 then paid, to purchase the premises at any time within 90 days for the sum of $7,500.

Plaintiff gave written notice of acceptance of the option within the 90 days and tendered the purchase

price later after an examination of the title. Defendant refused to perform the contract, claiming that Mr. Warwick represented to her, the day the option was given, and when Mr. O'Brien was absent, that he could sell the premises for $7,500 with $100 down; that she did not understand the various kinds of papers that might be used in arranging an option for the sale of land; that Mr. O'Brien wrote out the paper and talked with Mr. Warwick and she did not understand what they were saying or what they were writing and Mr. Warwick put the pen in her hand and said, "Just put your name down there," and she put her name down without thinking; that Mr. O'Brien and Mr. Warwick were in her house about 15 minutes and she expected Mr. Warwick would come back and explain things but he did not, and she called up Mr. Black, an attorney, and asked him to come over and see what the paper stated, that she could not make it out; that she did not know the paper was an option and would not have signed it if she had known; that when she learned the nature of the paper she caused notice to be given to plaintiff's agent of her want of understanding of the matter and of her repudiation of the option.

The learned circuit judge was of the opinion that defendant did not comprehend the nature or effect of the paper she signed and

"that the variance between a contract of sale which it is apparent Mrs. Murray believed she had signed, and the option in question, is so great that the minds of the parties did not meet. Also that the disparity between the experience and capacity of Mr. O'Brien, well trained for such transactions, and the lack of such training and capacity on the part of Mrs. Murray is so great that the parties did not meet on equal footing. Proper pains was not taken to advise her as to the real character of the instrument she signed."

The price fixed in the option appears to have been a

fair one at that time and within $500 of the amount for which she had for some time been trying to sell the premises, but after the date of the option there was a sharp rise in the value of the premises.

Upon the hearing defendant was permitted to give the conversations she had with Mr. Warwick and her attorney. Mr. Warwick was her agent and she ought not to have been permitted to give the conversation she had with him in the absence of plaintiff's agent before she signed the option, neither can she plant any right to relief upon the acts of her agent or on representations made to her by him or want of explanation by him without connecting plaintiff's agent therewith. The conversation between defendant and her attorney should have been excluded when objected to. Her state of mind cannot be shown by self-serving statements made to her attorney. It was proper to show that she at once consulted an attorney but inadmissible for her to show what she said to him. The trial judge let such testimony in to show her state of mind. Self-serving statements cannot be introduced for such a purpose.

In considering the question of defendant's want of understanding of what she was doing when she signed the option, the connection with the matter of defendant's agent, to whom she sent plaintiff's agent for the purpose of the negotiation, must be kept in mind. Plaintiff's agent, having been sent by defendant to her agent, had a right to assume that such agent had fully explained to defendant the proposition when he carried it to her and came back and, therefore, defendant when she signed the option by advice of her agent, knew what she was doing. Defendant cannot be freed from the contract on the ground that her agent, either in the absence or presence of plaintiff's agent, did not explain to her that $1 instead of $100 was to be paid down and that the paper she was sign-

ing was an option. It is not sufficient for defendant to set up her want of understanding of the option she signed. The blame for her lack of understanding of the true import of the paper cannot be put upon plaintiff's agent in the absence of misrepresentation by him or of conduct leading her into mistake or bringing home to plaintiff's agent knowledge of her want of understanding and therefore of need to inform her. If we should hold that the option was void if she was mistaken as to its import when she signed and it was the duty of plaintiff's agent to make the matter so clear to her by explanation beyond the writing as to preclude her from being mistaken, we would have to overturn the safe rule of law, that a unilateral mistake arising from lack of understanding on the part of the party signing an option, undisclosed to and undiscovered by the other party, and not induced by misrepresentation, and with opportunity open to the party to have full information, will not release one who signs a contract with ability and opportunity to read the same.

The record is barren of evidence that the giving of the option was induced by any fraud, actual or constructive, practiced by plaintiff's agent or by any misrepresentation made by him or any mistake on the part of defendant induced by anything he said or did.

Defendant cannot urge that the contract was inoperative because plaintiff did not tender payment within the 90-day period. The delay arose out of the failure of defendant to furnish a suitable abstract as she had agreed. Having determined that she would not perform the contract at all defendant is in no position to urge that she is released from performance on the ground that time of payment was of the essence of the contract.

It is true that acceptance of the option had to be in writing, but upon the hearing of the suit brought

by the Standard Oil Company for specific performance of the contract, made such by the written acceptance of the option signed, "Standard Oil Co. (Ind.) E. P. Galbreath, Mgr.," it would have been senseless to spend time showing the authority of Mr. Galbreath.

The provision in the option releasing plaintiff if an ordinance or permit could not be obtained to conduct its business upon the premises, or if obtained, if it should be revoked before the consummation of the purchase, did not survive the notice of acceptance and tender of full performance and constitutes no defense. Recognizing the rule that specific performance of contracts is not a matter of strict legal right but resting in the sound discretion of the court to be granted or refused according to the circumstances of the particular case, we have reached the conclusion that under the evidence the established principles of equity require specific performance in this case, and the decree below is reversed and a decree will be entered here granting specific performance of the contract with costs to appellant.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.